NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 70

No. 24-AP-001

In re John Grismore

Supreme Court

On Appeal from
Vermont Criminal Justice Council

September Term, 2024

William Sorrell, Chair

Kim McManus, Associate General Counsel, Vermont Criminal Justice Council, Pittsford, for
 Plaintiff-Appellee.

Robert J. Kaplan, Burlington, for Defendant-Appellant.

PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.    **CARROLL, J.**    Respondent, Franklin County Sheriff John Grismore, appeals from a Vermont Criminal Justice Council order concluding he engaged in gross professional misconduct and permanently revoking his law-enforcement officer certification. On appeal, respondent does not challenge the merits of the Council's decision. He argues the order should be reversed because the Council erred in denying his motion to disqualify or recuse itself from the proceedings. He contends that because the Council was acting in a quasi-judicial capacity and the prosecuting attorney for his contested case also serves as associate general counsel for the Council on other matters, the Council was required to recuse itself pursuant to the Vermont Code of Judicial Conduct. Alternatively, he argues even if the Code does not apply to the Council, due process required the Council to disqualify or recuse itself. We affirm.

¶ 2.  The Council has authority to maintain standards of "professional conduct" for law-enforcement officers in Vermont by accepting and tracking unprofessional-conduct complaints, "adjudicating charges of unprofessional conduct" and "imposing sanctions on the certification of an officer who the Council finds has committed unprofessional conduct." 20 V.S.A. § 2351(b)(2); id. §§ 2406-2407 (listing permitted sanctions and limitations). The Council accepts complaints alleging officer misconduct from all sources. Id. § 2404(a)(2)(A). Law-enforcement agencies are required to investigate certain allegations of unprofessional conduct., id. § 2404(a)(1)(A), and to report to the Council certain complaints of misconduct, including "credible complaint[s]" of Category B misconduct. Id. § 2403(a)(1)(B)(i).[1]

¶ 3.  The Council adopted procedures for conducting investigations of complaints in accordance with its statutory authority. Id. § 2411; see Rules and Regulations, Code of Vt. Rules 80 070 001 [hereinafter VCJC Rules], http://www.lexisnexis.com/hottopics/codeofvtrules. The Council established the Professional Regulation Subcommittee to recommend procedures for investigating complaints. VCJC Rules, Rule 26. The Professional Regulation Subcommittee, comprised of members of the Council appointed for the purpose of acting on the Subcommittee, investigates allegations of misconduct directed to the Council. Vermont Criminal Justice Council, Professional Regulation Subcommittee Unprofessional Conduct Complaint and Investigation Procedures § 6.1 (2021), [hereinafter PRS Procedures], https://vcjc.vermont.gov/sites/vcjtc/files/ documents/PRSProceduresClean120821Approved091521.pdf [https://perma.cc/2BFW-296P]. Once the Subcommittee completes an investigation of a complaint alleging unprofessional conduct

---

[1]  The Legislature has classified unprofessional conduct by law-enforcement officers as "Category A," "Category B," and "Category C" conduct. 20 V.S.A. § 2401. "Category A conduct" includes a felony, a misdemeanor committed while on duty, and certain misdemeanors committed off duty. Id. § 2401(1). "Category B conduct" includes "gross professional misconduct amounting to actions on duty or under authority of the State, or both, that involve willful failure to comply with a State-required policy, or substantial deviation from professional conduct" including first-offense "excessive use of force." Id. § 2401(2). "Category C" conduct includes "allegation[s] of misconduct pertaining to Council processes or operations." Id. § 2401(3).

by an officer, the Subcommittee may close the investigation and take no further action, propose a settlement, or provide notice of a hearing. PRS Procedures § 8.1. If, after consulting with the Executive Director and assigned legal counsel, the Subcommittee finds a sufficient basis to allege unprofessional conduct for which the Council may impose a sanction and settlement cannot be reached or is not warranted by the facts, the Subcommittee directs the Executive Director to file a notice of a hearing, commencing unprofessional conduct proceedings. PRS Procedures § 8.1.3. No member of the Subcommittee may serve as a "voting member[] of the Council or participate or appear in any deliberative or executive session of the Council, related to any unprofessional conduct proceeding that implicates any matter related to the Respondent considered during such member's service on the Subcommittee." PRS Procedures § 8.1.5.

¶ 4.    The Council is required to "conduct its proceedings in accordance with the Vermont Administrative Procedure Act [VAPA]," 20 V.S.A. § 2405, which requires parties to a contested case be provided with "an opportunity for [a] hearing after reasonable notice." 3 V.S.A. § 809 (outlining requirements for notice and proceedings in contested cases); id. § 801(b)(2) (defining "contested case").

¶ 5.    In June 2023, respondent received a notice of hearing, accompanied by a cover letter signed by Attorney Kim McManus, associate general counsel for the Council. The letter advised respondent the Subcommittee found a sufficient basis to support an allegation of unprofessional conduct against him. Enclosed with the letter was a notice of hearing and an explanation of the allegations signed by the Executive Director. Respondent was charged with "Category B gross professional misconduct" for violating the Statewide Policy on Police Use of Force. See 20 V.S.A. §§ 2368(b), 2404(a)(1)(A).[2] Specifically, respondent was alleged to have

_____

[2] Respondent was also initially charged with "Category A" conduct for simple assault, committed while on duty. 20 V.S.A. § 2401(1)(B). The Category A conduct allegation was not adjudicated before the Council. Attorney McManus addressed the Council at the start of the hearing and indicated that although the Council could decide independently as to the assault

3

"recklessly and unnecessarily kicked a person in police custody for no legitimate reason and caused that person pain." The notice advised respondent the hearing would be held in accordance with the VAPA, 3 V.S.A. §§ 809-816, and that the Council would also be considering the imposition of sanctions, including permanently revoking his certification. The notice advised him of the procedures and his right to contest the allegations, including the opportunity to present evidence on his behalf.

¶ 6. Respondent, through his attorney, filed a motion requesting the Council recuse or disqualify itself from the proceedings. Respondent argued the Council was subject to the Vermont Code of Judicial Conduct because it was adjudicating the charged misconduct and acting in a quasi-judicial capacity. He maintained the Code prohibited the Council from presiding over the matter because Attorney McManus was simultaneously prosecuting the case and acting as associate general counsel for the Council, creating "the impression of bias" and an "appearance of impropriety." See Vt. Code of Judicial Conduct, Rules 1.2, 2.4. Respondent argued the Council's familiarity with and loyalty to Attorney McManus would prevent the Council from acting impartially during the hearing. Respondent pointed to Attorney McManus's act of signing his hearing notice, emails in which Attorney McManus inquired of the Council Chair and respondent's attorney about the applicable law and rules for the proceedings and deadlines for procedural motions, and Attorney McManus's objection to respondent's motion to recuse or disqualify the Council via email to the Council Chair. Respondent's attorney was included on these emails. Alternatively, respondent asserted even if the Council concluded it was not subject to the Code, it should nonetheless disqualify or recuse itself because Attorney McManus's role as both prosecuting attorney in this proceeding and legal advisor to the Council on other matters violated his due-process rights.

charge, the parties would not be litigating that charge because respondent had a separate criminal case pending. Therefore, the proceedings solely addressed the Category B conduct allegation.

4

¶ 7. The Council denied respondent's motion. First, the Council concluded the Code did not apply to proceedings before the Council, relying on our decision in In re Crushed Rock, Inc., 150 Vt. 613, 557 A.2d 84 (1988). Second, the Council noted respondent would be afforded a fair hearing consistent with the procedural requirements for contested cases outlined by the VAPA. The Council concluded respondent received reasonable notice of the allegations and would receive an opportunity to respond to such allegations at the contested hearing, including the right to present evidence on his behalf and be represented by an attorney. Additionally, the Council indicated it was represented by conflict counsel in matters involving the proceedings and this attorney "played no role in the investigation, Professional Regulation Subcommittee proceedings, and/or the charging of any violations." The Council further noted this attorney was under contract with the Council for these purposes. Finally, the Council indicated no members of the Council who would take part in the decision following the contested hearing "will have played any role in the investigation of this matter, will have participated in the Professional Subcommittee's review of this matter or will have been involved in this matter's referral to the Council for adjudication."

¶ 8. The contested hearing was held over two days during November and December 2023. Prior to the start of the merits of the hearing, the Council Chair alerted the other Council members to respondent's motion to recuse or disqualify the Council. He encouraged the members of the Council to recuse themselves if any member of the Council felt they would not be impartial toward respondent. The hearing proceeded with no member of the Council recusing themselves. The Council heard testimony, and documentary and video evidence from both sides.

¶ 9. Following the hearing, the Council issued a written order, pursuant to 3 V.S.A. § 812. The Council unanimously found, by a preponderance of the evidence, that respondent engaged in unprofessional conduct. Specifically, the Council concluded respondent's use of force constituted Category B misconduct because the force used "was objectively unreasonable, unnecessary, punitive, and demonstrative of a failure to use reasonable alternatives," and thus

5

inconsistent with the Statewide Policy on Police Use of Force. A majority of the eligible Council members voted to permanently revoke respondent's law-enforcement officer certification. No member of the Subcommittee took part in the Council's decision.

¶ 10. Respondent appealed the Council's decision to this Court. See 3 V.S.A. § 815(a) (providing review by this Court of contested case decision). On appeal, respondent does not challenge the Council's conclusion he engaged in Category B unprofessional conduct or the Council's decision to permanently revoke his certification. Respondent argues the Council's decision should be reversed because the Council erred in denying his motion to recuse or disqualify itself. Respondent argues the Code required the Council to recuse or disqualify itself from the proceedings because Attorney McManus's prosecution of his case before the Council created an impression of bias. Respondent requests we overrule our decision in Crushed Rock and hold the Code applies to administrative agencies acting in a quasi-judicial capacity, or alternatively, conclude that our holding in Crushed Rock does not apply here. Respondent also argues even if the Code does not apply to the Council, Attorney McManus's role as prosecuting attorney in this case while simultaneously acting as the Council's attorney on other matters violated his due-process rights.

¶ 11. Our review of matters outside the Council's expertise, such as alleged due-process violations and other questions of law, is de novo. Burch-Clay v. Taylor, 2015 VT 110, ¶ 15, 200 Vt. 166, 130 A.3d 180. First, we address respondent's argument that we should overturn our precedent holding the Code does not apply to administrative proceedings. See Crushed Rock, 150 Vt. at 623, 557 A.2d at 90. "[T]his Court is not a slavish adherent to the principle of stare decisis." Ferry v. City of Montpelier, 2023 VT 4, ¶ 40, 217 Vt. 450, 296 A.3d 749 (alteration in original) (quotation omitted). However, we do not "lightly overturn recent precedent, especially where the precedent could be changed easily by legislation at any time." In re Barber, 2018 VT 78, ¶ 2 n.1, 208 Vt. 77, 195 A.3d 364 (quotation omitted) (declining to overturn precedent interpreting

6

procedural rule when it "can be amended by a process independent of a change in this Court's case law").

¶ 12. In Crushed Rock, the permittee challenged a decision of the Environmental Board revoking an Act 250 permit. Prior to the revocation proceedings before the Environmental Board, the Environmental Board brought an action in the superior court against the permittee seeking a declaratory judgment that the permittee violated the conditions of the permit. Afterwards, the permittee asked the Environmental Board to stay the revocation proceedings pending the superior court's determination. When the Environmental Board declined, the permittee moved to disqualify the Environmental Board, arguing the Environmental Board had predetermined the outcome of the revocation hearing. On appeal from the Environmental Board's conclusion that the permittee violated the permit and decision to permanently revoke it, one of the permittee's arguments as to why the Environmental Board's decision should be reversed was that it violated the Code by denying their motion to disqualify. Crushed Rock, 150 Vt. at 623, 557 A.2d at 90. Although we vacated the Environmental Board's decision on other grounds, we rejected the permittee's argument and held the Code did not apply to those with adjudicatory powers in the executive branch because the Code "was adopted pursuant to our power to adopt a 'code of judicial ethics which shall be binding on [judicial] officers for disciplinary purposes,' " id. (quoting 4 V.S.A. § 3) (citing Vt. Const. ch. II, §§ 30, 36), and that applying the Code to the executive branch is a choice only for the Legislature. Id.; see Vt. Const. ch. II, § 5 (separation of powers provision).

¶ 13. We reaffirmed this decision in McIsaac v. University of Vermont. 2004 VT 50, ¶ 20, 177 Vt. 16, 853 A.2d 77. In McIsaac, the grievant appealed a decision of the Vermont Labor Relations Board rejecting her argument the university violated its rules and regulations when it denied her application for tenure. Prior to the hearing before the Board, the grievant moved to disqualify one of the members on the panel because, among other reasons, this member had previously reviewed the grievant's application when it was initially presented to the dean. Id. ¶ 19.

7

On appeal, the grievant argued the Board erred when it denied her motion to disqualify the member on the ground that the same standard for judges applied to those with adjudicatory powers in administrative tribunals. Id. ¶ 20. We rejected this argument as a misstatement of the law, reaffirming our decision in Crushed Rock that the Code does not apply to the executive branch. Id. Applying the Code to those acting in the quasi-judicial capacity in the executive branch, we reiterated, is a choice only the Legislature can make. Id.

¶ 14. Respondent argues this Court should overrule Crushed Rock because "the regulatory and political landscape has shifted drastically since" 1988, citing to various points at which the Legislature has extended the authority of the Council. However, it is not within the purview of this Court to apply the Code to the Council, regardless of its quasi-judicial status or changes in the political landscape. Members of the Council are not judicial officers. Extending the Code to those outside the judicial branch is a choice for the Legislature, not this Court. As we recognized in McIsaac, "[t]he Legislature has not acted since Crushed Rock to apply the Code to administrative proceedings." 2004 VT 50, ¶ 20. The Legislature has yet to so act. Accordingly, we remain unpersuaded by respondent's argument that Crushed Rock should be overruled.

¶ 15. Alternatively, respondent asserts Crushed Rock does not apply here because the Council and the Environmental Board do not "occupy the same regulatory importance." However, our decisions in Crushed Rock and McIsaac did not rely on the relative importance of the Environmental Board or the Labor Relations Board, or whether either was acting in a quasi-judicial capacity. The Code does not apply to those in the executive branch, regardless of the importance of the agency or whether the decisionmakers are acting with adjudicatory power, unless the Legislature chooses otherwise. The Council was correct to conclude that the Code is inapplicable to proceedings before it.

¶ 16. Because we reject respondent's request to overrule Crushed Rock and decline to apply the Code to the executive branch, absent direction from the Legislature, we need not address

8

the argument the Code required the Council to recuse itself. However, respondent also argues even if the Code does not apply to the Council, the Council is "still bound by basic provisions of due process." Respondent neither contests the Council's conclusions that he was provided with adequate notice of the allegations, nor argues he was not given a fair opportunity to respond to the allegations during the hearing. His primary reasoning, relying solely on Bruteyn v. State Dental Council & Examining Board, 380 A.2d 497 (Pa. Commw. Ct. 1977) as persuasive authority, is that because Attorney McManus acts as a legal advisor to the Council on other matters, the Council would unconsciously favor her in the proceedings and was therefore required to recuse itself.

¶ 17. Due process requires a fair hearing before an unbiased decisionmaker, both in courts and administrative agencies. Withrow v. Larkin, 421 U.S. 35, 46 (1975). "The presence of bias—or prejudgment, a form of bias—may preclude a fair and impartial hearing." Burch-Clay, 2015 VT 110, ¶ 23. In administrative proceedings, decisionmakers enjoy "a presumption of honesty and integrity," Sec'y, Agency of Nat. Res. v. Upper Valley Reg'l Landfill Corp., 167 Vt. 228, 235, 705 A.2d 1001, 1005 (1997) (citing Withrow, 421 U.S. at 47), and "only in the most extreme of cases is disqualification for bias constitutionally required." In re JLD Props. of St. Albans, LLC, 2011 VT 87, ¶ 9, 190 Vt. 259, 30 A.3d 641 (quotation omitted) (holding disqualification required when board chair "expressed open contempt for the group as outsiders and elitists, implying that they were illegitimate participants in the proceedings before the board"). It is respondent's burden to overcome this presumption. Sec'y, Agency of Nat. Res., 167 Vt. at 235, 705 A.2d at 1005.

¶ 18. We have recognized "intermixing of roles" is "a hallmark of a due process violation" in administrative adjudications, Crushed Rock, 150 Vt. at 621, 557 A.2d at 89, and "[d]ue process generally does not tolerate multiplicity of functions by a single individual in an adjudicative proceeding." Burch-Clay, 2015 VT 110, ¶ 34. Still, as other courts have observed, "allotting the prosecutorial function to a staff of attorneys or other personnel who will not

9

participate in the eventual decision is a common and recommended feature of administrative enforcement activity." In re 2007 Admins. of Appropriations of Water of Niobrara River, 820 N.W.2d 44, 59 (Neb. 2012); see also La Petit Auberge, Inc. v. R.I. Comm'n for Hum. Rts., 419 A.2d 274, 285 (R.I. 1980) (holding no bias in "absence of evidence that the same individuals are involved in the building of an adversary case and the deciding of the issues"); Burhoe v. Whaland, 356 A.2d 658, 659 (N.H. 1976) ("[T]he constitutional guarantee of due process is violated when the hearing officer presents the case for one party, cross-examines the witnesses of the other party, and then decides the case."). Generally, an administrative agency's attorney may act as the prosecuting attorney in a contested hearing if the prosecuting attorney is not advising the decisionmaker before, during, or after the proceedings and is not involved in the decisionmaking process. See 2 C. Koch & R. Murphy, Administrative Law & Practice § 6:31 (3d ed. 2024) ("State courts follow federal law in insisting that the claimant show something more than the fact that the same agency employs both the prosecutor and the judge.").

¶ 19.    In support of his due-process argument, respondent points to Bruteyn as persuasive authority. He argues that it is improper for Attorney McManus to assume the role as prosecutor for his contested case, while also serving the role as legal advisor to the Council in other matters. Respondent's reliance on Bruteyn is misguided. In Bruteyn, Bruteyn argued the State Dental and Examining Board violated his rights to a fair hearing because the prosecuting attorney in the contested hearing also advised the Board "before, during, and after the hearing." 380 A.2d at 499. The prosecuting attorney in that case provided legal advice to the Board during pre-investigation procedures and on Bruteyn's evidentiary motions during the proceedings. Id. at 502. The Board was unrepresented by independent counsel during the proceedings and the prosecuting attorney took part in the drafting of the final order. Id. at 499, 502. The Commonwealth Court of Pennsylvania reversed the Dental Council and Examining Board's order because the procedures

10

of the hearing were "unconstitutionally tainted," despite no evidence of any actual prejudice. <u>Id</u>. at 502.

¶ 20.    <u>Bruteyn</u> has no persuasive value here.  Unlike in <u>Bruteyn</u>, no intermixing of roles occurred in this case.  Attorney McManus's only involvement in the case outside the role of prosecutor was with members of the Subcommittee, none of whom sat on the panel or were involved in the decisionmaking process in any way.  Attorney McManus gave no legal advice to the Council regarding the admissibility of evidence or otherwise, had no discussions with the Council members about the merits of the case, and did not take part in the drafting of the final order.  Most importantly, the Council was independently represented during the proceedings and the Council consulted this attorney on all issues, before, during, and after the hearing.  Respondent does not contest otherwise.

¶ 21.    To the extent respondent's due-process argument goes beyond the application of <u>Bruteyn</u>, it has not been adequately briefed.  See V.R.A.P. 28(a) (setting standard for adequate briefing); <u>State v. Bergquist</u>, 2019 VT 17, ¶ 64 n.13, 210 Vt. 102, 211 A.3d 946 ("We will not consider issues, even those of a constitutional nature, that are insufficiently raised and inadequately briefed."); <u>Carpin v. Vt. Yankee Nuclear Power Corp.</u>, 2024 VT 27, ¶ 16 n.4, __ Vt. __, 319 A.3d 715 (declining to address constitutional claim when "plaintiff failed to adequately brief it beyond a passing reference [and] offering no authority").  Respondent fails to provide any additional support or authority for why the Council's denial of his motion to recuse or disqualify itself violated his due-process rights.  The emails respondent points to show no indicia of favoritism or bias toward Attorney McManus and were consistent with her role as an advocate.  Respondent has not demonstrated any way in which the Council consciously or unconsciously favored Attorney McManus during the proceedings and has not contested the Council's conclusions regarding the role of Attorney McManus or the conflict counsel that advised the Council on all matters related

to the proceedings. As such, respondent has failed to rebut the presumption of honesty and integrity afforded to the Council under these circumstances.

¶ 22. Respondent has not demonstrated the Council erred in denying his motion to recuse or disqualify itself from the proceedings. We reaffirm, as we held in <u>Crushed Rock</u> and <u>McIsaac</u>, that if additional limitations are to be placed on those with adjudicatory power in the executive branch, it is a matter for the Legislature, not this Court. Respondent has failed to identify any violation of his due-process rights.

<u>Affirmed</u>.

FOR THE COURT:

_____

Associate Justice

12